**COMMISSION FOR HEALTH ECONOMICS CONTROL IN KENTUCKY, Appellant,**

v.

**MEDICAL CONSULTANTS IMAGING CO., Appellee.**

No. 92–CA–55–MR.

Court of Appeals of Kentucky.

Dec. 24, 1992.

John H. Gray, Frankfort, for appellant.

Lisa English Hord, McBrayer, McGinnis, Leslie & Kirkland, Lexington, for appellee.

Before LESTER, C.J. and EMBERTON and McDONALD, JJ.

McDONALD, Judge.

This appeal is taken from the Franklin Circuit Court's judgment reversing a decision of the Commission for Health Economics Control in Kentucky ("Commission") which held that appellee, Medical Consultant Imaging Co. ("MCI") was required to obtain a certificate of need to establish a mobile single photon emission computed tomography ("SPECT") unit.

The Commission concluded that MCI, by definition, had established a "health facility" as contemplated by KRS Chapter 216B and therefore is required to obtain a certificate of need. KRS 216B.061(1) provides:

(1) Unless otherwise provided in this chapter, no person shall do any of the following without first obtaining a certificate of need:

(a) Establish a health facility;

(b) Obligate a capital expenditure which exceeds the capital expenditure minimum;

(c) Make a substantial change in the bed capacity of the health facility;

(d) Make a substantial change in the health service;.

(e) Make a substantial change in the project;

(f) Acquire major medical equipment;

. . . .

KRS 216B.015(11) defines a health facility to mean:

[A]ny institution, place, building, agency, or portion thereof, public or private, whether organized for profit or not, used, operated, or designed to provide medical diagnosis, treatment, nursing, re-

habilitative, preventive care and includes alcohol abuse, drug abuse, and mental health services. This shall include, but shall not be limited to, health facilities and health services commonly referred to as hospitals, psychiatric hospitals, physical rehabilitation hospitals, chemical dependency programs, tuberculosis hospitals, skilled nursing facilities, nursing facilities, nursing homes, personal care homes, intermediate care facilities, family care homes, primary care centers, rural health clinics, outpatient clinics, ambulatory care facilities, ambulatory surgical centers, emergency care centers and services, ambulance services, non-emergency health transportation services, hospices, community mental health and mental retardation centers, home health agencies, kidney disease treatment centers and freestanding hemodialysis units, health maintenance organizations, and others providing similarly organized services regardless of nomenclature.

Major medical equipment is defined in KRS 216B.015(13) to mean:

... equipment which is used for the provision of medical and other health services and which costs in excess of the medical equipment expenditure minimum, except that term does not include medical equipment acquired by or on behalf of a medical laboratory. For purposes of this paragraph, "medical equipment expenditure minimum" means one million five hundred thousand dollars ($1,500,000) beginning July 15, 1990, and as adjusted annually thereafter. In determining whether medical equipment has a value in excess of the medical equipment expenditure minimum, the value of studies, surveys, designs, plans, working drawings, specifications, and other activities essential to the acquisition of the equipment shall be included.

The trial court, having concluded that there was insufficient evidence to support the Commission's finding that MCI had established a health facility, reversed the decision. It was concluded that MCI merely proposed to lease the SPECT unit to hospitals and provide the technician to operate it. The court held that:

For MCICo to establish a health facility under the definition of KRS 216B.015(11), MCICo must provide some "medical diagnosis, treatment, nursing, rehabilitative or preventive care" as contemplated by the statute. MCICo's proposed plan provides none of these things. MCICo simply provides a technician who operates the SPECT camera and acts as the driver of the truck which houses the SPECT camera. Requiring MCICo to obtain a Certificate of Need under these circumstances exceeds the scope and purposes of KRS 216B.015(11) and (15) and KRS 216B.061. Since the Commission's order is not supported by evidence in the record, and is therefore arbitrary, IT IS HEREBY SET ASIDE AND HELD FOR NAUGHT.

Having reviewed the record, it is our opinion that under the facts and circumstances of this case, it is obvious that MCI has not proposed what is tantamount to the establishment of a health facility. As demonstrated and related in the trial court's opinion, MCI has proposed to lease a mobile SPECT unit. It has been shown that a SPECT unit is a sophisticated camera which reads the emission of radioactivity from tissue by utilizing a unique photographic technique. Before being photographed, the patient is given a radiopharmaceutical. The radioactive elements contained in the pharmaceutical act as imaging agents. As the elements collect in the target organ, the level of radioactivity is measured. The emissions are captured on film by the camera. This procedure allows for assessment of tissue function and early detection of disease. MCI proposed to transport the unit to various hospitals according to the hospitals' needs. The evidence also established that the undisputed cost of the equipment was well below the medical equipment expenditure minimum of $1,500,000, and thus it does not constitute major medical equipment within the parameters of KRS 216B.015(12). Also undisputed was the fact that MCI intended to lease the SPECT to hospitals which were licensed and had the ability to provide nuclear medical services and diagnoses. A

nuclear medicine physician would order the test and together with the nuclear medicine department of the hospital would bear the responsibility for administering the test, prescribing the type of radiopharmaceutical to be given, the method in which it was to be administered, and the actual administration of the pharmaceutical to the patient. MCI would not be involved in any of the above-outlined decisions, nor would it be responsible for providing patient care. MCI would only provide the equipment and a technician who would operate the camera and computer. The hospital staff and/or physician would be responsible for interpreting the data and making a diagnosis. MCI would not be involved in providing diagnoses whatsoever. Additionally, the hospital, not MCI, would assess charges and bill patients.

For the foregoing reasons and because the court determined that MCI simply proposed what was in essence a "lease" of medical equipment and a technician to operate it for the various licensed hospitals, it was concluded that MCI had not established a health facility within the statutory definition of KRS 216B.015(11) and a finding of such was contrary to the evidence.

Kentucky law mandates that the Commission's decision be supported by substantial evidence. *Starks v. Kentucky Health Facilities*, Ky.App., 684 S.W.2d 5 (1985), and KRS 216B.120. The Franklin Circuit Court properly reviewed the Commission's decision to determine whether it was supported by substantial evidence. Having done so, the court properly concluded that there was not sufficient evidence to support the Commission's finding.

The trial court properly applied the law to the facts of this case. The decision is affirmed. MCI is not required to obtain a certificate of need in order to provide a SPECT unit to hospitals for use by them in providing medical diagnoses to their patients.

All concur.